**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION**

| | | |
|---|---|---|
| Norman IP Holdings, LLC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | Civil Action No.  6:11-cv-00084-LED |
| v. | § | |
| | § | |
| Canon USA, Inc., *et al*. | § | **Jury Trial Demanded** |
| | § | |
| Defendants. | § | |

**PLAINTIFF NORMAN IP HOLDINGS, LLC'S ANSWER
TO COUNTERCLAIMS OF DEFENDANTS FUJIFILM CORPORATION
AND FUJIFILM NORTH AMERICA CORPORATION**

Plaintiff Norman IP Holdings, LLC ("Norman"), hereby responds to the counterclaims asserted in Defendants FUJIFILM Corporation and FUJIFILM North America Corporation (collectively, "FUJIFILM"), Answer to Plaintiff's Original Complaint, Affirmative Defenses and Counterclaims (the "Counterclaims") as follows.   The numbered paragraphs in Norman's Answer below correspond to the like-numbered paragraphs of the Counterclaims.   Except as expressly admitted below, Norman denies the allegations and characterizations in FUJIFILM's Counterclaims.

## COUNTERCLAIMS

### THE PARTIES

1.      FUJIFILM Corporation is a corporation organized and existing under the laws of Japan, with its principal place of business located at Midtown West, 7-3, Akasaka 9-chome, Minato-ku, Tokyo 107-0052, Japan. FUJIFILM North America Corporation is a New York corporation, with its principal place of business located at 200 Summit Lake Drive, Valhalla, New York 10595.

RESPONSE:  Admitted.

2.      Upon information and belief, based on the allegations in its Complaint, Norman is a corporation organized and existing under the laws of the State of Texas having its principal place of business at 100 E. Ferguson, Suite 816, Tyler, Texas 75702.

RESPONSE:  Admitted.

## JURISDICTION AND VENUE

3.      FUJIFILM restates and incorporates herein by reference the responses and allegations contained in the foregoing paragraphs, as if fully set forth herein.

RESPONSE:  No new factual allegations are set forth in this paragraph.

4.      These Counterclaims arise under the patent laws of the United States, 35 U.S.C. § 1, *et seq.* Therefore, this Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1332, and/or 1338(a).

RESPONSE:  Admitted.

5.      FUJIFILM's requests for declaratory judgment are proper pursuant to 28 U.S.C. § 2201. In this Judicial District, Norman filed its Complaint against FUJIFILM on February 17, 2011, alleging that FUJIFILM has infringed and is infringing U.S. Patent Nos. 5,530,597 (the "'597 Patent"), 5,502,689 (the "'689 Patent"), and 5,608,873 (the "'873 Patent") (collectively, the "Asserted Patents").

RESPONSE:  Admitted, though Norman has now filed its First Amended Complaint.

6.      This Court has personal jurisdiction over Norman by virtue of the fact that Norman brought an affirmative suit in this Judicial District. In addition, on information and belief, personal jurisdiction is proper in this Judicial District because Norman resides in this Judicial District.

RESPONSE:  Admitted.

7.     Venue is proper in this Judicial District under 28 U.S.C. §§ 1391(b)-(c) and/or 1400(b).

RESPONSE:  Admitted.

## FACTUAL BACKGROUND

8.     In its Complaint, Norman asserts that FUJIFILM has infringed and is infringing the Asserted Patents.

RESPONSE:  Admitted.

9.     FUJIFILM has not infringed and does not infringe the Asserted Patents literally, under the doctrine of equivalents, directly, contributorily, by inducement, or in any other manner, either directly or indirectly.

RESPONSE:  Denied.

10.    One or more of the claims of the Asserted Patents are invalid for failing to comply with the conditions and requirements of patentability set forth in the patent statutes, including, but not limited to, one or more of 35 U.S.C. §§ 101, 102, 103, and 112.

RESPONSE:  Denied.

11.    The Asserted Patents are unenforceable.

RESPONSE:  Denied.

12.    Consequently, there is an actual case or controversy between FUJIFILM and Norman over the non-infringement, invalidity, and unenforceability of the Asserted Patents.

RESPONSE:  Admitted that there is a case or controversy.

**COUNT ONE**
**DECLARATORY JUDGMENT OF NON-INFRINGEMENT OF THE '597 PATENT**

13.     FUJIFILM restates and incorporates herein by reference the responses and allegations contained in the foregoing paragraphs, as if fully set forth herein.

RESPONSE:  No new factual allegations are set forth in this paragraph.

14.     Norman contends that FUJIFILM has infringed and is infringing the '597 Patent. FUJIFILM has not infringed and does not infringe any valid and enforceable claim of the '597 Patent, has not induced or contributed to infringement of any such claims, and is not inducing or contributing to infringement of any such claims, either literally or under the doctrine of equivalents.

RESPONSE:   Regarding the first sentence, admitted.   As to the remainder of this paragraph, denied.

15.     As a result of Norman's infringement allegations, an actual case or controversy exists between FUJIFILM and Norman with regard to the purported infringement of the '597 Patent by FUJIFILM. Absent a declaration of non-infringement, Norman will continue to wrongfully assert the '597 Patent against FUJIFILM and others, including its customers, in violation of the laws and contrary to the public policy of the United States, and will thereby continue to cause FUJIFILM irreparable injury and damage.

RESPONSE:   Regarding the first sentence, admitted.   As to the remainder of this paragraph, denied.

16.     FUJIFILM therefore seeks a judicial declaration that it has not infringed and does not infringe the '597 Patent.

RESPONSE:  Admitted that FUJIFILM seeks a declaration; denied that it is meritorious.

**COUNT TWO**
**DECLARATORY JUDGMENT OF INVALIDITY OF THE '597 PATENT**

4

17.     FUJIFILM restates and incorporates herein by reference the responses and allegations contained in the foregoing paragraphs, as if fully set forth herein.

RESPONSE:  No new factual allegations are set forth in this paragraph.

18.     Norman has asserted the '597 Patent against FUJIFILM. On information and belief, one or more claims of the '597 Patent are invalid for failure to meet the conditions of patentability and/or otherwise comply with one or more of the provisions of Title 35 of the United States Code, including but not limited to one or more of 35 U.S.C. §§ 101, 102, 103, and 112.

RESPONSE:   Regarding the first sentence of this paragraph, admitted.   As to the remainder of this paragraph, denied.

19.     As a result of Norman's allegations, an actual case or controversy exists between FUJIFILM and Norman as to the validity of the '597 Patent.  Absent a declaration of invalidity, Norman will continue to assert the '597 Patent against FUJIFILM and others, including its customers, in violation of the laws and contrary to the public policy of the United States, and will thereby continue to cause FUJIFILM irreparable injury and damage.

RESPONSE:   Regarding the first sentence of this paragraph, admitted.   As to the remainder of this paragraph, denied.

20.     FUJIFILM therefore seeks a judicial declaration that the '597 Patent is invalid.

RESPONSE:  Admitted that FUJIFILM seeks a declaration; denied that it is meritorious.

## COUNT THREE
## DECLARATORY JUDGMENT OF UNENFORCEABILITY OF THE '597 PATENT

21.     FUJIFILM restates and incorporates herein by reference the responses and allegations contained in the foregoing paragraphs, as if fully set forth herein.

RESPONSE:  No new factual allegations are set forth in this paragraph.

22.     Norman has asserted the '597 Patent against FUJIFILM. On information and belief, the '597 Patent is unenforceable under the doctrines of equitable estoppel, laches, waiver, and express or implied license.

RESPONSE:   Regarding the first sentence of this paragraph, admitted.   As to the remainder of this paragraph, denied.

23.     As a result of Norman's allegations, an actual case or controversy exists between FUJIFILM and Norman as to the enforceability of the '597 Patent. Absent a declaration of unenforceability, Norman will continue to assert the '597 Patent against FUJIFILM and others, including its customers, in violation of the laws and contrary to the public policy of the United States, and will thereby continue to cause FUJIFILM irreparable injury and damage.

RESPONSE:   Regarding the first sentence of this paragraph, admitted.   As to the remainder of this paragraph, denied.

24.     FUJIFILM therefore seeks a judicial declaration that the '597 Patent is unenforceable.

RESPONSE:  Admitted that FUJIFILM seeks a declaration; denied that it is meritorious.

## COUNT FOUR
## DECLARATORY JUDGMENT OF NON-INFRINGEMENT OF THE '689 PATENT

25.     FUJIFILM restates and incorporates herein by reference the responses and allegations contained in the foregoing paragraphs, as if fully set forth herein.

RESPONSE:  No new factual allegations are set forth in this paragraph.

26.     Norman contends that FUJIFILM has infringed and is infringing the '689 Patent. FUJIFILM has not infringed and does not infringe any valid and enforceable claim of the '689 Patent, has not induced or contributed to infringement of any such claims, and is not inducing or

contributing to infringement of any such claims, either literally or under the doctrine of equivalents.

RESPONSE:   Regarding the first sentence of this paragraph, admitted.   As to the remainder of this paragraph, denied.

27.    As a result of Norman's infringement allegations, an actual case or controversy exists between FUJIFILM and Norman with regard to the purported infringement of the '689 Patent by FUJIFILM. Absent a declaration of non-infringement, Norman will continue to wrongfully assert the '689 Patent against FUJIFILM and others, including its customers, in violation of the laws and contrary to the public policy of the United States, and will thereby continue to cause FUJIFILM irreparable injury and damage.

RESPONSE:   Regarding the first sentence of this paragraph, admitted.   As to the remainder of this paragraph, denied.

28.    FUJIFILM therefore seeks a judicial declaration that it has not infringed and does not infringe the '689 Patent.

RESPONSE:  Admitted that FUJIFILM seeks a declaration; denied that it is meritorious.

**COUNT FIVE**
**DECLARATORY JUDGMENT OF INVALIDITY OF THE '689 PATENT**

29.    FUJIFILM restates and incorporates herein by reference the responses and allegations contained in the foregoing paragraphs, as if fully set forth herein.

RESPONSE:  No new factual allegations are set forth in this paragraph.

30.    Norman has asserted the '689 Patent against FUJIFILM. On information and belief, one or more claims of the '689 Patent are invalid for failure to meet the conditions of patentability and/or otherwise comply with one or more of the provisions of Title 35 of the

United States Code, including but not limited to one or more of 35 U.S.C. §§ 101, 102, 103, and 112.

RESPONSE:   Regarding the first sentence of this paragraph, admitted.   As to the remainder of this paragraph, denied.

31.   As a result of Norman's allegations, an actual case or controversy exists between FUJIFILM and Norman as to the validity of the '689 Patent. Absent a declaration of invalidity, Norman will continue to assert the '689 Patent against FUJIFILM and others, including its customers, in violation of the laws and contrary to the public policy of the United States, and will thereby continue to cause FUJIFILM irreparable injury and damage.

RESPONSE:   Regarding the first sentence of this paragraph, admitted.   As to the remainder of this paragraph, denied.

32.   FUJIFILM therefore seeks a judicial declaration that the '689 Patent is invalid.

RESPONSE:  Admitted that FUJIFILM seeks a declaration; denied that it is meritorious.

## COUNT SIX
## DECLARATORY JUDGMENT OF UNENFORCEABILITY OF THE '689 PATENT

33.   FUJIFILM restates and incorporates herein by reference the responses and allegations contained in the foregoing paragraphs, as if fully set forth herein.

RESPONSE:  No new factual allegations are set forth in this paragraph.

34.   Norman has asserted the '689 Patent against FUJIFILM. On information and belief, the '689 Patent is unenforceable under the doctrines of equitable estoppel, laches, waiver, and express or implied license.

RESPONSE:   Regarding the first sentence of this paragraph, admitted.   As to the remainder of this paragraph, denied.

35.     On information and belief, one or more individuals associated with the filing and prosecution of the application for the '689 Patent withheld material information from the United States Patent and Trademark Office ("USPTO") with an intent to deceive.

RESPONSE:  Denied.

36.     Specifically, on information and belief, one or more individuals involved with the filing and/or prosecution of the '689 Patent, including but not limited to Dale E. Gulick, Joseph W. Peterson, and Roger Maxwell, withheld from the USPTO two "data books" published by the original assignee of the '689 Patent, Advanced Micro Devices, Inc. ("AMD").

RESPONSE:  Denied.

37.     Those "data books" – a June 1990 Rev. E version of the Am79C30A Digital Subscriber Controller and a June 1992 Rev. F version of the Am79C30A Digital Subscriber Controller Circuit (collectively, "the Am79C30A Data Books") – disclose each and every limitation of at least claims 5 and 6 of the '689 Patent.

RESPONSE:  Denied.

38.     The Am79C30A Data Books were published by AMD prior to the priority date of the '689 Patent and are therefore prior art to the '689 Patent claims pursuant to 35 U.S.C. § 102.

RESPONSE:  Denied.

39.     As the Am79C30A Data Books disclose each and every limitation of at least claims 5 and 6 of the '689 Patent, and as the Am79C30A Data Books are prior art to the claims of the '689 Patent pursuant to 35 U.S.C. § 102, the Am79C30A Data Books were highly material to the patentability of the claims of the '689 Patent.

RESPONSE:  Denied.

40.     On information and belief, the '689 Patent is a continuation of U.S. Patent Application, Serial No. 07/918,622 ("the '622 Application"). The '622 Application was filed on July 21, 1992. During the prosecution of the '622 Application, no information disclosure form identifying any prior art was submitted to the USPTO.

RESPONSE:   Regarding the first sentence and second sentence of this paragraph, admitted.   Regarding the remainder of this paragraph, Plaintiff lacks knowledge or information sufficient to form a belief about the truth of the allegations herein, therefore, denied.

41.     The '622 Application contained pending claim 17, which stated: "A method for controlling at least one output clock signal comprising the steps of: receiving a disable request signal; stopping said at least one output clock signal after a predetermined length of time after receiving said disable request signal; receiving an enable request signal; and starting said at least one output clock signal after receiving said enable request signal." In addition, the '622 Application contained pending claim 19, which incorporated each limitation of pending claim 17 and added: "wherein said step of stopping said at least one output clock signal comprises the steps of verifying that said disable request signal satisfies a predetermined protocol requirement, and processing said disable request signal only if said disable request signal satisfies said predetermined protocol requirement" ("the predetermined protocol limitation").

RESPONSE:   Admitted that the paragraph purports to quote a pending claim 17 and a pending claim 19 of the '622 Application.   Regarding the remainder of this paragraph, denied.

42.     On information and belief, the Am79C30A Data Books disclose a known set of rules constituting a predetermined protocol that protect against software error causing accidental entry of the device into shut-down mode: "A special write procedure must be followed . . . . This procedure greatly reduces the probability of errant software disabling the system . . . ." Based on

their teachings, the Am79C30A Data Books were highly material to the '622 Application. Furthermore, the Am79C30A Data Books were not cumulative of any references of record because there were no references of record and the background section of the '622 Application did not disclose the predetermined protocol of the Am79C30A Data Books. The Background section of the '689 Patent identifies a problem with the prior art as "there has been encountered problems heretofore where software error or noise results in the accidental entry of the device into the power-down mode resulting in the inadvertent disabling of most functional blocks," yet describes no prior art solution to the identified problem. Thus, the Am79C30A Data Books were highly material, noncumulative prior art to the '622 Application.

RESPONSE:  Denied.

43.    On October 4, 1993, the USPTO issued a Notice of Allowability for the '622 Application. On information and belief, one or more individuals involved with the filing and/or prosecution of the '689 Patent filed a Petition to Withdraw on February 24, 1994. Also on February 24, 1994, one or more individuals involved with the filing and/or prosecution of the '689 Patent filed a continuation application, Serial No. 08/201,077 ("the '077 Application"), which ultimately issued as the '689 Patent. One or more individuals involved with the filing and/or prosecution of the '689 Patent filed an information disclosure statement for the '077 Application that listed six prior art references but did not disclose the Am79C30A Data Books. The Am79C30A Data Books are not cumulative of any reference of record.

RESPONSE:  Regarding the first sentence, admitted.  Regarding the second, third, and fourth sentences of this paragraph, Plaintiff lacks knowledge or information sufficient to form a belief about the truth of the allegations, and therefore, such allegations are denied.  Regarding the last sentence of this paragraph, denied.

44.     During prosecution of the '077 Application, the examiner rejected pending claim 17 as being anticipated by EP 229,692 A2 to Michael Norman Day ("the Norman Reference"), but noted that pending claim 17 would be allowable if the limitation of pending claim 19 was incorporated into pending claim 17. One or more individuals involved with the filing and/or prosecution of the '689 Patent amended the claims of the '077 Application to combine pending claims 17 and 19, the combination of which became issued claim 5 of the '689 Patent. On information and belief, the examiner recognized that the Norman Reference disclosed every limitation of pending claim 17, but did not disclose the "predetermined protocol limitation" of pending claim 19. On information and belief, the examiner only allowed issued claim 5 because the applicants added the "predetermined protocol limitation" of claim 19 to pending claim 17. Claim 6 of the '689 Patent is dependent on claim 5, and adds limitations requiring a delay between the starting of a clock signal and the starting of the output clock signal.

RESPONSE:   The public record speaks for itself.   As to the remaining allegations, Plaintiff lacks knowledge or information sufficient to form a belief about the truth of the allegations set forth in this paragraph, and therefore, such allegations are denied.

45.     On information and belief, at least Mr. Gulick was specifically aware of the disclosures of the relevant portions of the Am79C30A Data Books prior to and during the prosecution of the '689 Patent as evidenced by the existence of several articles authored by Mr. Gulick discussing the Am79C30A digital subscriber controller circuit published prior to the priority date of the '689 Patent. Thus, at least Mr. Peterson, Mr. Gulick, and Mr. Maxwell (the prosecuting attorney) knew of the Am79C30A Data Book's relevance to the invention described in the '622 Application, the '077 Application, and ultimately, the '689 Patent.

RESPONSE:  Plaintiff lacks knowledge or information sufficient to form a belief about the truth of the allegations set forth in this paragraph, and therefore, such allegations are denied.

46.     Despite their high level of materiality, upon information and belief, at least Mr. Gulick, Mr. Peterson, and Mr. Maxwell withheld, i.e., failed to submit, the Am79C30A Data Books to the USPTO during the prosecution of the '689 Patent.

RESPONSE:  Denied.

47.     Based on knowledge of the shut-down functionality of the Am79C30A Data Books and the high materiality and noncumulative nature of the Am79C30A Data Books, at least Mr. Gulick, Mr. Peterson, and Mr. Maxwell withheld the Am79C30A Data Books from the USPTO with an intent to deceive, as the claims of the '689 Patent would not have issued in their current form had the Am79C30A Data Books been provided to the USPTO.

RESPONSE:  Denied.

48.     As a result of Norman's allegations, an actual case or controversy exists between FUJIFILM and Norman as to the enforceability of the '689 Patent. Absent a declaration of unenforceability, Norman will continue to assert the '689 Patent against FUJIFILM and others, including its customers, in violation of the laws and contrary to the public policy of the United States, and will thereby continue to cause FUJIFILM irreparable injury and damage.

RESPONSE:  Regarding the first sentence of this paragraph, admitted.  As to the remainder of this paragraph, denied.

49.     FUJIFILM therefore seeks a judicial declaration that the '689 Patent is unenforceable.

RESPONSE:  Admitted that FUJIFILM seeks a declaration; denied that it is meritorious.

**COUNT SEVEN**
**DECLARATORY JUDGMENT OF NON-INFRINGEMENT OF THE '873 PATENT**

50.    FUJIFILM restates and incorporates herein by reference the responses and allegations contained in the foregoing paragraphs, as if fully set forth herein.

RESPONSE:  No new factual allegations are set forth in this paragraph.

51.    Norman contends that FUJIFILM has infringed and is infringing the '873 Patent. FUJIFILM has not infringed and does not infringe any valid and enforceable claim of the '873 Patent, has not induced or contributed to infringement of any such claims, and is not inducing or contributing to infringement of any such claims, either literally or under the doctrine of equivalents.

RESPONSE:   Regarding the first sentence of this paragraph, admitted.   As to the remainder of this paragraph, denied.

52.    As a result of Norman's infringement allegations, an actual case or controversy exists between FUJIFILM and Norman with regard to the purported infringement of the '873 Patent by FUJIFILM. Absent a declaration of non-infringement, Norman will continue to wrongfully assert the '873 Patent against FUJIFILM and others, including its customers, in violation of the laws and contrary to the public policy of the United States, and will thereby continue to cause FUJIFILM irreparable injury and damage.

RESPONSE:   Regarding the first sentence of this paragraph, admitted.   As to the remainder of this paragraph, denied.

53.    FUJIFILM therefore seeks a judicial declaration that it has not infringed and does not infringe the '873 Patent.

RESPONSE: Admitted that FUJIFILM seeks a declaration; denied that it is meritorious.

14

## COUNT EIGHT
## DECLARATORY JUDGMENT OF INVALIDITY OF THE '873 PATENT

54.     FUJIFILM restates and incorporates herein by reference the responses and allegations contained in the foregoing paragraphs, as if fully set forth herein.

RESPONSE:  No new factual allegations are set forth in this paragraph.

55.     Norman has asserted the '873 Patent against FUJIFILM. On information and belief, one or more claims of the '873 Patent are invalid for failure to meet the conditions of patentability and/or otherwise comply with one or more of the provisions of Title 35 of the United States Code, including but not limited to one or more of 35 U.S.C. §§ 101, 102, 103, and 112.

RESPONSE:   Regarding the first sentence of this paragraph, admitted.   As to the remainder of this paragraph, denied.

56.     As a result of Norman's allegations, an actual case or controversy exists between FUJIFILM and Norman as to the validity of the '873 Patent. Absent a declaration of invalidity, Norman will continue to assert the '873 Patent against FUJIFILM and others, including its customers, in violation of the laws and contrary to the public policy of the United States, and will thereby continue to cause FUJIFILM irreparable injury and damage.

RESPONSE:   Regarding the first sentence of this paragraph, admitted.   As to the remainder of this paragraph, denied.

57.     FUJIFILM therefore seeks a judicial declaration that the '873 Patent is invalid.

RESPONSE:  Admitted that FUJIFILM seeks a declaration; denied that it is meritorious.

**COUNT NINE**
**DECLARATORY JUDGMENT OF UNENFORCEABILITY OF THE '873 PATENT**

58.     FUJIFILM restates and incorporates herein by reference the responses and allegations contained in the foregoing paragraphs, as if fully set forth herein.

RESPONSE:  No new factual allegations are set forth in this paragraph.

59.     Norman has asserted the '873 Patent against FUJIFILM. On information and belief, the '873 Patent is unenforceable under the doctrines of equitable estoppel, laches, waiver, and express or implied license.

RESPONSE:   Regarding the first sentence of this paragraph, admitted.   As to the remainder of this paragraph, denied.

60.     In addition, on information and belief, Norman's allegations of infringement of the '873 Patent are barred because the '873 Patent is unenforceable pursuant to the doctrine of inequitable conduct.

RESPONSE:  Denied.

61.     Upon information and belief, one or more individuals associated with the filing and prosecution of the application for the '873 Patent withheld material information USPTO with an intent to deceive.

RESPONSE:  Denied.

62.     Specifically, upon information and belief, one or more individuals involved with the filing and/or prosecution of the '873 Patent, including but not limited to prosecuting attorney Brian McNamara, violated the duty of disclosure during the prosecution of the '873 patent by failing to advise the USPTO regarding the co-pendency and existence of the applications that resulted in United State Patent No. 5,771,394 (the "'394 Patent"). The '873 Patent describes and claims an invention that is nearly identical to the invention described and claimed by the '394

16

Patent. On information and belief, the '873 Patent and the '394 Patent were based on a single inventive effort at AMD of at least four individuals: Ryan Feemster and David Dettmer (the named inventors on the '873 Patent) and Saf Asghar and Brett Stewart (the named inventors on the '394 Patent). Rather than listing all four inventors in one patent application describing and claiming the alleged invention, AMD submitted two separate applications, listing two inventors on each application. These applications were simultaneously prosecuted by Mr. McNamara but separately reviewed by different examiners at the USPTO.

RESPONSE:  Denied.

63.    On information and belief, one or more individuals involved with the filing and/or prosecution of the '873 Patent, including but not limited to Mr. McNamara, withheld the following from the USPTO: (1) the patent applications on which the '394 Patent is based, which includes U.S. Patent Application Serial Nos. 07/983,477 ("the '477 Application," abandoned), 08/400,498 ("the '498 Application," abandoned), 08/470,003 ("the '003 Application," abandoned), and 08/675,304 ("the '304 Application") (collectively referred to as "the '394 Patent Applications"); (2) certain prior art references cited during prosecution of the '394 Patent including, but not limited to, Schiffleger (U.S. Patent No. 5,142,638), Weber (U.S. Patent No. 4,807,281), Sato (U.S. Patent No. 5,210,852), and an article entitled, "Concept of Macro-Pipelining with High Availability," by Wolfgang Haendler ("the Haendler Article"); and (3) certain office actions from the prosecution of the underlying '394 Patent Applications including, but not limited to, a September 9, 1994 rejection of Claims 1-26 of the '477 Application based on disclosures in MacKenna (U.S. Patent No. 5,310,753) and Nagai (U.S. Patent No. 5,161,209), a September 12, 1995 rejection of claims 1-26 of the '498 Application based on disclosures in Cutts (U.S. Patent No. 4,965,717), an October 16, 1995 rejection of claims 23 and 30-32 of

17

the'003 Application as anticipated by Cutts, an April 1, 1996 rejection of claims 23, 26 and 30-32 of the '003 Application as anticipated by Cutts, and a November 15, 1996 rejection of claims 25-27, 29-32 and 34 in the '304 Application as anticipated by the Haendler Article (collectively referred to as "the Withheld Office Actions").

RESPONSE:  Denied.

64.     On information and belief, the '304 Application, filed on July 1, 1996, which ultimately issued as the '394 Patent, is a continuation application of the '003 Application, filed on June 6, 1995, which is a continuation of the '498 Application, filed on March 8, 1995, which is a continuation of the '477 Application, filed on December 3, 1992. The specification of the '394 Patent is substantially identical to each of the '394 Patent Applications.

RESPONSE:  Plaintiff lacks knowledge or information sufficient to form a belief about the truth of the allegations herein, therefore, denied.

65.     On information and belief, the '317 Application, filed on June 28, 1996, which ultimately issued as United States Patent No. 5,630,165 (the "'165 Patent"), is a continuation application of the '498 Application, filed on March 8, 1995, which is a continuation of the '477 Application, filed on December 3, 1992.

RESPONSE:  The public record speaks for itself.  To the extent the foregoing characterization differs, denied.

66.     On information and belief, U.S. Patent Application Serial No. 08/842,323 (the "'323 Application), which ultimately issued as United States Patent No. 5,771,393 (the '393 Patent), is a divisional application of the '317 Application, filed on June 28, 1996, which is a continuation of the '498 Application, filed on March 8, 1995, which is a continuation of the '477 Application, filed on December 3, 1992.

RESPONSE:  The public record speaks for itself.  To the extent the foregoing

18

characterization differs, denied.

67.     The original named inventors of the '477 Application, '498 Application, '003 Application, '317 Application, '304 Application, '165 Patent, '393 Patent, and '394 Patent are Saf Asghar and Brett Stewart.

RESPONSE:  The public record speaks for itself.  To the extent the foregoing characterization differs, denied.

68.     In October of 2009, Saf Asghar, Brett Stewart, Ryan Feemster, David Dettmer signed statements in support of a Petition to Correct Inventorship In An Issued Patent Under 37 CFR § 1.324 that added Ryan Feemster and David Dettmer as inventors of the '394 Patent.

RESPONSE:  The public record speaks for itself.  To the extent the foregoing characterization differs, denied.

69.     On information and belief, the '873 Patent, which issued from U.S. Patent Application Serial No. 08/675,217 ("the '217 Application"), filed on July 3, 1996, is a continuation of U.S. Patent Application Serial No. 08/113,299 ("the '299 Application"), filed on August 30, 1993. The '217 and '299 Applications are referred to herein as "the '873 Patent Applications."

RESPONSE:  The public record speaks for itself.  To the extent the foregoing characterization differs, denied.

70.     On information and belief, the '873, '394, '165, and '393 Patents were based on a single inventive effort at AMD of at least four AMD employees: Ryan Feemster, David Dettmer, Saf Asghar, and Brett Stewart.

RESPONSE:  The public record speaks for itself.  To the extent the foregoing characterization differs, denied.

71.     AMD is the assignee listed on the face of the '873 Patent, '165 Patent, '393 Patent,

and '394 Patent.

RESPONSE: Admitted.

72.     Mr. McNamara is the principal prosecuting attorney for all patent applications that matured into the '873 Patent, '165 Patent, '393 Patent, and '394 Patent.

RESPONSE:  Plaintiff lacks knowledge or information sufficient to form a belief about the truth of the allegations herein, therefore, denied.

73.     On information and belief, the '873 Patent examiner would have provisionally rejected claims of the '873 patent and thus, the '873 Patent would not have issued in its present form if the '477 Application, which has a filing date that precedes the filing date of the '299 Application (the parent application to the '873 Patent), was disclosed to the examiner of the '873 Patent.

RESPONSE:  Denied.

74.     Mr. McNamara filed the '299 Application on August 30, 1993, nearly ten months after Mr. McNamara filed the '477 Application. On August 30, 1993, the '477 Application was still pending before the USPTO.

RESPONSE:  The public record speaks for itself.  To the extent the foregoing characterization differs, denied.

75.      The '165 Patent, '393 Patent, and '394 Patent constitute prior art to the '873 Patent under the statutory language of 35 U.S.C. 102(e) in 1993.

RESPONSE:  Denied.

76.     On September 30, 1993, Mr. McNamara filed an Information Disclosure Statement ("First '873 Patent IDS") in support of the '299 Application.

RESPONSE:  The public record speaks for itself.  As to the remaining allegations, Plaintiff lacks knowledge or information sufficient to form a belief about the truth of the

20

allegations herein, therefore, denied.

77.     In the First '873 Patent IDS, Mr. McNamara listed three U.S. patents and asserted that these are "documents known to Applicants in order to comply with Applicants' duty of disclosure pursuant to 37 C.F.R. §1.56."

RESPONSE: The public record speaks for itself. As to the remaining allegations, Plaintiff lacks knowledge or information sufficient to form a belief about the truth of the allegations herein, therefore, denied.

78.     On information and belief, Mr. McNamara failed to identify the '477 Application in the First '873 Patent IDS.

RESPONSE: Plaintiff lacks knowledge or information sufficient to form a belief about the truth of the allegations herein, therefore, denied.

79.     On information and belief, the '477 Application describes a multi-processor system containing four blocks of RAM that are used for sharing information among the four processors. Each processor of the multi-processor system described in the '477 Application can only write data to a corresponding block of RAM and can read data from all the RAM blocks. Each processor of the multi-processor system described in the '477 Application writes its data to its own block of RAM and signals the recipient processor to read the sender's RAM block.

RESPONSE: The public record speaks for itself. To the extent the foregoing characterization differs, denied.

80.     On information and belief, the '299 Application examiner would have issued provisional rejections to at least Claim 1 of the '299 Application, as filed on August 30, 1993, based on the fact that the '477 Application specification disclosed every element of pending claim 1 of the '299 Application, as shown in the following chart:

| Claim 1, '299 Application (as filed on August 30, 1993) | '477 Application Specification |
|---|---|

| An apparatus for communicating between a plurality of processor devices, comprising | These four blocks of RAM can be used for transferring information among the four processors. 8:25-26; Figure 1b. |
| --- | --- |
| a post office memory including a plurality of mailbox memories; | See above. *Id.* |
| each of the mailbox memories being write accessible only by its owner processor device, | A processor can only write data to the corresponding portion of RAM. Thus microprocessor 102 writes data to RAM block 146, streamlined signal processors 108 and 106 write data to RAM blocks 148 and 150, respectively, and an external controller, such as an optical data channel controller, writes data only to RAM block 152. 8:30-36. |
| and read-accessible by its owner and other the [sic] processor devices. | All the processors can read all the memory blocks to facilitate transfer of data from one processor to another. Thus, to exchange information between processors . . . the processor with the information writes its data to its own block of RAM . . . and signals the recipient . . . to read the sender's RAM block. 8:38-9:9. |

RESPONSE: Denied.

81.     On or about February 17, 1994, the '477 Application examiner issued an office action rejecting all pending claims of the '477 Application.

RESPONSE:  The public record speaks for itself.  As to the remaining allegations, Plaintiff lacks knowledge or information sufficient to form a belief about the truth of the allegations herein, therefore, denied.

82.     On or about June 20, 1994, another attorney from the law firm Foley & Lardner, filed an Amendment and Request for Reconsideration on behalf of Mr. McNamara in support of the '477 Application.

RESPONSE:  Plaintiff lacks knowledge or information sufficient to form a belief about the truth of the allegations herein, therefore, denied.

83.     On September 9, 1994, '477 Application examiner finally rejected all pending claims of the '477 Application.

RESPONSE:  The public record speaks for itself.  As to the remaining allegations, Plaintiff lacks knowledge or information sufficient to form a belief about the truth of the allegations herein, therefore, denied.

84.     On March 8, 1995, another attorney from Foley & Lardner filed the '498 Application, a continuation of the '477 Application.

RESPONSE:  Plaintiff lacks knowledge or information sufficient to form a belief about the truth of the allegations herein, therefore, denied.

85.     On information and belief, Mr. McNamara and the '498 Application examiner conducted a personal interview on May 11, 1995 discussing all pending claims of the '498 application and the prior art of record.  The '498 Application examiner noted in the Examiner Interview Summary Record that "[t]he applicant proposed a new amendment to show the differences between the claims and the prior art of record."

RESPONSE:  Admitted that the paragraph purports to quote the Examiner Interview Summary Record.  As to the remainder of this paragraph, Plaintiff lacks knowledge or information sufficient to form a belief about the truth of the allegations herein, therefore, denied.

86.     On May 16, 1995, Mr. McNamara submitted a Preliminary Amendment in support of the '498 Application. Specifically, Mr. McNamara amended the pending claims of the '498 Application to further require that a process has write access *at any time* to *any location* in its corresponding memory and read access *at any time* to *any location* in its corresponding memory and the corresponding memory of another processor.

RESPONSE:  Plaintiff lacks knowledge or information sufficient to form a belief about the truth of the allegations herein, therefore, denied.

87.     Mr. McNamara specifically noted in the May 16, 1995 Preliminary Amendment that "[d]uring the interview [on May 11, 1995] it was generally agreed that the amendments to the present

23

claims distinguish over the references cited in the final rejection in the parent ['477] application. For

example, as amended, claim 1 recites a servo loop control apparatus with a master processor and a

second processor. *The master processor is connected via a bus to a memory and has write access at*

*any time to any location in the first portion of the memory and read access at any time to any*

*location in the first portion and the second portion of the memory. Similarly, the second processor*

*has write access at any time to any location in the second portion of the memory and read access to*

*any location in the first and second portions of the memory.*"

RESPONSE:  The public record speaks for itself.  Admitted that the paragraph purports to

quote the May 15, 1995 Preliminary Amendment.  As to the remaining allegations, Plaintiff

lacks knowledge or information sufficient to form a belief about the truth of the allegations

herein, therefore, denied.

88.     On or about July 5, 1995, the '299 Application examiner issued an office action

rejecting all pending claims of the '299 Application.

RESPONSE:  The public record speaks for itself.  As to the remaining allegations,

Plaintiff lacks knowledge or information sufficient to form a belief about the truth of the

allegations herein, therefore, denied.

89.     On November 6, 1995, Mr. McNamara submitted an Amendment and Request for

Reconsideration in support of the '299 Application.

RESPONSE:  Plaintiff lacks knowledge or information sufficient to form a belief about

the truth of the allegations herein, therefore, denied.

90.     On information and belief, in an attempt to overcome prior art, Mr. McNamara

amended the pending claims to further require the mailbox memories to be write accessible *at any*

*time* only by a corresponding owner processor device and read accessible by both the corresponding

owner processor device and the plurality of processor devices *at times determined independently of a*

*write access.* Specifically, Mr. McNamara noted that "[u]nlike the present invention, [the prior art reference] does not provide a system in which each of the mailbox memories is write accessible by its owner processor device *at any time*."

RESPONSE:  Plaintiff lacks knowledge or information sufficient to form a belief about the truth of the allegations herein, therefore, denied.

91.    On information and belief, the specification of the '299 Application does not contain the language "*at any time*."

RESPONSE:  The public record speaks for itself.  As to the remaining allegations, Plaintiff lacks knowledge or information sufficient to form a belief about the truth of the allegations herein, therefore, denied.

92.    On information and belief, Mr. McNamara amended the pending claims of the '299 Application to further include the "*at any time*" claim limitation based on information he obtained during the prosecution of the '498 Application, including information he obtained during the interview with the '498 Application examiner, dated May 11, 1995.

RESPONSE:  Plaintiff lacks knowledge or information sufficient to form a belief about the truth of the allegations herein, therefore, denied.

93. On information and belief, the '299 Application examiner would have issued provisional rejections to at least Claim 1 of the '299 Application, as amended on November 6, 1995, based on the fact that the '477 Application specification disclosed every element of pending claim 1 of the '299 Application, as shown in the following chart:

| Claim 1, '299 Application (as amended on November 6, 1995) | '477 Application Specification |
| --- | --- |
| An apparatus for communicating between a plurality of processor devices, comprising | These four blocks of RAM can be used for transferring information among the four processors. 8:25-26; Figure 1b. |
| a post office memory including a plurality of mailbox memories; | See above. *Id.* |
| each of the mailbox memories being write | A processor can only write data to the |

| accessible only by a corresponding owner processor device and | corresponding portion of RAM. Thus microprocessor 102 writes data to RAM block 146, streamlined signal processors 108 and 106 write data to RAM blocks 148 and 150, respectively, and an external controller, such as an optical data channel controller, writes data only to RAM block 152. 8:30-36. |
|---|---|
| Read-accessible by the corresponding owner processor device and other processor devices of the plurality of processor devices at times determined independently of a write access. | All the processors can read all the memory blocks to facilitate transfer of data from one processor to another. Thus, to exchange information between processors . . . the processor with the information writes its data to its own block of RAM . . . and signals the recipient . . . to read the sender's RAM block. 8:38-9:9. |

RESPONSE:  Denied.

94.     On or about February 5, 1996, the '299 Application examiner finally rejected all pending claims of the '299 Application.

RESPONSE:  The public record speaks for itself.  As to the remaining allegations, Plaintiff lacks knowledge or information sufficient to form a belief about the truth of the allegations herein, therefore, denied.

95.     On information and belief, another attorney from Foley & Lardner submitted another Amendment and Request for Reconsideration, on June 5, 1996, which further amended the pending claims of the '299 Application.

RESPONSE:  Plaintiff lacks knowledge or information sufficient to form a belief about the truth of the allegations herein, therefore, denied.

96.     On or about June 17, 1996, the '299 Application examiner issued an Advisory Action rejecting all pending claims of the '299 Application.

RESPONSE:  The public record speaks for itself.  As to the remaining allegations, Plaintiff lacks knowledge or information sufficient to form a belief about the truth of the

allegations herein, therefore, denied.

97.     On July 3, 1996, Mr. McNamara submitted the '217 Application, a continuation of the '299 Application, in order to continue the prosecution of the pending claims of the '299 Application. At that time, Mr. McNamara was also prosecuting the '317 Application and '304 Application, grandchildren applications to the '477 Application.

RESPONSE:  Plaintiff lacks knowledge or information sufficient to form a belief about the truth of the allegations herein, therefore, denied.

98.     On July 3, 1996, Mr. McNamara filed an Information Disclosure Statement under 37 C.F.R. 1.56 together with the '217 Application ("Second '873 Patent IDS").

RESPONSE:  The public record speaks for itself.  As to the remaining allegations, Plaintiff lacks knowledge or information sufficient to form a belief about the truth of the allegations herein, therefore, denied.

99.     In the Second '873 Patent IDS, Mr. McNamara listed a number of U.S. patents, articles and European patents and asserted that these are "documents known to Applicants in order to comply with Applicants' duty of disclosure pursuant to 37 C.F.R. §1.56."

RESPONSE:  Plaintiff lacks knowledge or information sufficient to form a belief about the truth of the allegations herein, therefore, denied.

100.    Mr. McNamara failed to identify the '477 Application, '498 Application, and the co-pending '317 and '304 Applications in the Second '873 Patent IDS.

RESPONSE:  Plaintiff lacks knowledge or information sufficient to form a belief about the truth of the allegations herein, therefore, denied.

101.    To continue prosecuting the claims of the '299 Application under the '217 Application, Mr. McNamara requested the '217 Application examiner to enter the June 5, 1996 amendment.

RESPONSE:  Plaintiff lacks knowledge or information sufficient to form a belief about the truth of the allegations herein, therefore, denied.

102. On information and belief, the '217 Application examiner would have issued provisional rejections to at least Claim 1 of the '217 Application, as filed on July 3, 1996, based on the fact that the '477 Application specification disclosed every element of pending claim 1 of the '217 Application, as shown in the following chart:

| Claim 1, '217 Application (as filed on July 3, 1996) | '477 Application Specification |
|---|---|
| An apparatus for communicating between a plurality of processor devices, comprising | These four blocks of RAM can be used for transferring information among the four processors. 8:25-26; Figure 1b. |
| a post office memory including a plurality of mailbox memories; | See above. *Id.* |
| each of the mailbox memories being write accessible at any time only by a corresponding owner processor device, and | A processor can only write data to the corresponding portion of RAM. Thus microprocessor 102 writes data to RAM block 146, streamlined signal processors 108 and 106 write data to RAM blocks 148 and 150, respectively, and an external controller, such as an optical data channel controller, writes data only to RAM block 152. 8:30-36. |
| read-accessible by the corresponding owner processor device and other processor devices of the plurality of processor devices at times determined independently of a write access; | All the processors can read all the memory blocks to facilitate transfer of data from one processor to another. 8:38-9:2. |
| the plurality of processor devices including a transmitting processor device and a receiving processor device; | Thus, to exchange information between processors, . . . the processor with the information writes its data to its own block of RAM . . . and signals the recipient . . . read the sender's RAM block . . . . 9:2-9. |
| a mailbox memory corresponding to the transmitting processor device containing information to be transferred to the receiving processor device; and | See above. *Id.* |
| the transmitting processor device being determined prior to the receiving processor device reading the information to be transferred. | See above. *Id.* |

RESPONSE:  Denied.

103.    On information and belief, the '477 Application specification disclosed every element of these claims of the '299 and '217 Applications, as illustrated in the table above. Therefore, the '477 Application was highly material to the prosecution of the '873 Patent and should have been disclosed. Yet, on information and belief, one or more individuals involved with the filing and/or prosecution of the '873 Patent, including but not limited to Mr. McNamara, withheld the '394 Patent Applications (the '477, '498, '003, and '304 Applications) from the USPTO.

RESPONSE:  Denied.

104.    Further, on information and belief, the '394, '873 and '165 Patents include claims that are directed to multiple-read, single-write memory spaces which may be accessed "at any time." On that basis, numerous provisional obviousness-type double-patenting rejections would conceivably have issued during prosecution of the '873 Patent if the '477, '498, '003 and/or '304 Applications were disclosed to the '873 Patent examiner.

RESPONSE:  Denied.

105.    Specifically, the '873 Patent examiner would conceivably have issued a provisional obvious-type double-patenting rejection directed at claim 1 of the '299 Application because the co-pending claim 1 of the '299 Application was patentably indistinct from the co-pending claim 1 of the '477 Application as of June 17, 1994. As shown in the chart below, as of June 17, 1994, both claim 1 of the '299 Application and claim 1 of the '477 Application were directed to an apparatus including a plurality of memories and a plurality of processors, whereby each processor has write access to only one memory and read access to all memories.

| Claim 1, '299 Application (as of June 17, 1994) | Claim 1, '477 Application (As Amended on June 17, 1994) |
|---|---|
| An apparatus for communicating between a plurality of processor devices, comprising | A master processor . . . and a second Processor |

| a post office memory including a plurality of mailbox memories; | a memory . . . with . . . said first and second portions of said memory |
| each of the mailbox memories being write accessible only by its owner processor device, | a master processor . . . having write access to a first portion of said memory / a second processor . . . with write access to said second portion of said memory |
| and read-accessible by its owner and other the [sic] processor devices. | a master processor . . . having . . . read access to said first portion and a said second portion of said memory / a second processor. . . with . . . read access to said first and second portions of said memory |

RESPONSE: Denied.

106.    Additionally, on information and belief, the '873 Patent examiner would have issued a provisional obvious-type double-patenting rejection directed at claim 1 of the '299 Patent because the co-pending claim 1 of the '299 Application was patentably indistinct from the co-pending claim 31 of the '003 Application as of November 6, 1995. As shown in the chart below, as of November 6, 1995, both claim 1 of the '299 Application and claim 31 of the '003 Application were directed to an apparatus including a plurality of memories and a plurality of processors, whereby each processor has write access "at any time" to only one memory and read access to all memories.

| Claim 1, '299 Application (as amended on November 6, 1995) | Claim 23, '003 Application (as of November 6, 1995) |
| --- | --- |
| An apparatus for communicating between a plurality of processor devices, comprising | An apparatus comprising a first processor; a second processor; a first memory; and a second memory; |
| a post office memory including a plurality of mailbox memories | See above. *Id.* |
| each of the mailbox memories being write accessible at any time only by a corresponding owner processor device and read-accessible by the corresponding owner processor device and other processor devices of the plurality of processor devices at times determined independently of a write access. | said first processor having write access at any time to any location in said first memory and read access at any time to any location in said first memory and said second memory; and

said second processor having write access at any time to any location in said second memory and read access at any time to any location in said first memory and said |

|  | second memory. |

| Claim 1, '299 Application (as amended on November 6, 1995) | Claim 31, '003 Application (as of November 6, 1995) |
|---|---|
| An apparatus for communicating between a plurality of processor devices, comprising | An apparatus comprising a plurality of processors and a plurality of memories, |
| a post office memory including a plurality of mailbox memories | See above. *Id.* |
| each of the mailbox memories being write accessible at any time only by a corresponding owner processor device and | each processor having write access at any time to only a particular one of said memories and |
| read-accessible by the corresponding owner processor device and other processor devices of the plurality of processor devices at times determined independently of a write access. | read access at any time to any of said memories. |

RESPONSE:  Denied.

107.    In addition to failing to disclose the '394 Patent Applications during prosecution of the '873 Patent, one or more individuals involved with the filing and/or prosecution of the '873 Patent, including but not limited to Mr. McNamara, also failed to disclose at least four references cited by the '394 Patent examiner during prosecution of the '394 Patent Applications: the Haendler Article that formed the basis for the § 102 rejection that was outstanding at the time the '873 Patent issued; the Schiffleger reference (U.S. Patent No. 5,142,638); the Weber reference (U.S. Patent No. 4,807,281); and the Sato reference (U.S. Patent No. 5,210,852). On information and belief, the Haendler article was cited in prosecution of the '394 Patent as anticipating, *inter alia*, claim 31 of the '304 Application, which was substantially similar in scope to then-pending claim 1 of the '217 Application.

RESPONSE:  Denied.

108.    On information and belief, the M.P.E.P. at the time of the prosecution of the '873 Patent required that "the prior art references from one application must be made of record in another

subsequent application if such prior art references are 'material to patentability' of the subsequent application." *See, e.g.,* M.P.E.P. § 2001.06(b) (5th ed., Rev. 14, 1992); M.P.E.P. § 2001.06(b) (6th ed., Rev. 2, 1996).

RESPONSE:  The public record speaks for itself.  Admitted that the paragraph purports to quote old versions of the M.P.E.P.  As to the remaining allegations, Plaintiff lacks knowledge or information sufficient to form a belief about the truth of the allegations herein, therefore, denied.

109.    The M.P.E.P. at the time of the prosecution of the '873 Patent required applicants to disclose material information they are aware of prior to or at the time of filing the application or *become aware of during the prosecution of the patent. See, e.g.,* M.P.E.P. § 2001.06 (5th ed., Rev. 14, 1992); M.P.E.P. §2001.06 (6th ed., Rev. 2, 1996).

RESPONSE:  The public record speaks for itself.  The public record speaks for itself. Admitted that the paragraph purports to quote old versions of the M.P.E.P.  As to the remaining allegations, Plaintiff lacks knowledge or information sufficient to form a belief about the truth of the allegations herein, therefore, denied.

110.    Furthermore, one or more individuals involved with the filing and/or prosecution of the '873 Patent, including but not limited to Mr. McNamara, did not submit to the USPTO certain office actions from the prosecution of the underlying '394 Patent Applications including, but not limited to, a September 9, 1994 rejection of Claims 1-26 of the '477 Application based on disclosures in MacKenna (U.S. Patent No. 5,310,753) and Nagai (U.S. Patent No. 5,161,209), a September 12, 1995 rejection of claims 1-26 of the '498 Application based on disclosures in Cutts (U.S. Patent No. 4,965,717), an October 16, 1995 rejection of claims 23 and 30-32 of the '003 Application as anticipated by Cutts, an April 1, 1996 rejection of claims 23, 26 and 30-32 of the '003 Application as anticipated by Cutts, and a November 15, 1996 rejection of claims 25-27, 29-32 and 34 in the '304 Application as anticipated by the Haendler Article (collectively referred to as "the

Withheld Office Actions").

RESPONSE:  Denied.

111.    On information and belief, the September 9, 1994 rejection of claims 1-26 of the '477 Application would have been applicable to at least claim 1 of the co-pending '299 Application. The '394 Patent examiner stated in this rejection that it would have been obvious to combine MacKenna with Nagai to create a system in which one processor "would write its status information to a portion of memory and the [other] processor would read this information and vice versa." This rejection would have been important to consideration of the patentability of claim 1 of the co-pending '299 Application because each of claim 1 of the '299 Application and claims 1-26 of the '477 Application claimed a system for multi-processor communication wherein processors write to one portion of memory but can read from all portions of memory.

RESPONSE:   Admitted that the paragraph purports to reproduce a quote from the referenced document.  Regarding the remainder of this paragraph, Plaintiff lacks knowledge or information sufficient to form a belief about the truth of the allegations herein, therefore, denied.

112.    On information and belief, the September 12, 1995 rejection of claims 1-26 of the '498 Application also would have been applicable to at least claim 1 of the co-pending '299 Application. The '394 Patent examiner stated in this rejection that Cutts disclosed "the use of . . . memory . . . to exchange information between . . . three processors," and "that each processor would write data to a private portion of the memory . . . and the other processors would read this data." This rejection would have been important to consideration of the patentability of claim 1 of the co-pending '299 Application because each of claim 1 of the '299 Application and claims 1-26 of the '498 Application claimed a system for multi-processor communication wherein processors write to one portion of memory but can read from all portions of memory.

RESPONSE:   Admitted that the paragraph purports to reproduce a quote from the

referenced document.  Regarding the remainder of this paragraph, Plaintiff lacks knowledge or information sufficient to form a belief about the truth of the allegations herein, therefore, denied.

113.    On information and belief, the October 16, 1995 rejection of claims 23 and 30-32 of the '003 Application also would have been applicable to at least claim 1 of the co-pending '299 Application.  The '394 Patent examiner stated in this rejection that, *inter alia*, claims 23 and 31 were anticipated by Cutts. This rejection would have been important to consideration of the patentability of claim 1 of the co-pending '299 Application because each of claim 1 of the '299 Application and claims 23 and 31 of the '003 Application claimed a system for multiprocessor communication wherein processors write to one portion of memory but can read from all portions of memory.

RESPONSE:  Denied.

114.    On information and belief, the April 1, 1996 rejection of claims 23, 26 and 30-32 of the '003 Application also would have been applicable to at least claim 1 of the co-pending '299 Application. In that rejection, the '394 Patent examiner specifically addressed the applicants' argument that Cutts did not "disclose an arrangement in which a processor may write to any memory location in its area at any time," and responded that, in fact, "Cutts discloses that each of the CPUs (processors) could write to any location in its private memory at any time." This rejection would have been important to consideration of the patentability of claim 1 of the co-pending '299 Application because each of claim 1 of the '299 Application and claims 23, 25, and 30-32 of the '003 Application claimed a system in which each processor could write to its mailbox memory "at any time."

RESPONSE:   Admitted that the paragraph purports to reproduce a quote from the referenced document.  Regarding the remainder of this paragraph, denied.

115.    On information and belief, the November 15, 1996 rejection of claims 25-27, 29-32 and 34 in the '304 Application also would have been applicable to at least claim 1 of the co-pending '217 Application. The '394 Patent examiner stated in this rejection that "Haendler teaches interprocessor communication among streamed signal processors" and "teaches substantially the claims limitations including the use of several processors . . . , [and] memory blocks . . . within a shared memory." The '394 Patent examiner further stated that "Haendler inherently teaches that each processor would have read and write accesses to its portion of memory, and other processor(s) would have only read access to that portion of the memory." This rejection would have been important to consideration of the patentability of claim 1 of the co-pending '217 Application because each of claim 1 of the '217 Application and claims 25-27, 29-32 and 34 of the '304 Application claimed a system for interprocessor communication using a shared memory in which each processor could write to its memory and read from other processors' memories.

RESPONSE:   Admitted that the paragraph purports to reproduce a quote from the referenced document.  Regarding the remainder of this paragraph, denied.

116.    None of the withheld material information was cumulative of information that was actually disclosed to the '873 Patent examiner. Mr. McNamara repeatedly argued that no reference before the '873 Patent examiner disclosed the ability of a processor in a multiprocessor system to write to its memory "at any time." On information and belief, the specification and claims of the '394 Patent Applications – the '477, '498, '003, and '304 Applications – plainly disclosed this limitation, as Mr. McNamara repeatedly reminded the '394 Patent examiner, thereby establishing that it was both material and non-cumulative.

REPONSE:  Denied.

35

117.    One or more individuals associated with the filing and/or prosecution of the '873 Patent, including at least Mr. McNamara, withheld all of this material information from the '873 Patent examiner with intent to deceive.

REPONSE:  Denied.

118.    Mr. McNamara was the principal prosecuting attorney for all the underlying applications that matured into the '873 Patent, the '165 Patent, the '393 Patent and the '394 Patent. On information and belief, Mr. McNamara knew of the withheld material information in the specifications of the '394 Patent Applications because he filed the '394 Patent Applications.

REPONSE:  Denied.

119.    On information and belief, Mr. McNamara knew of the withheld material information from the claims of the co-pending '477, '498, '003, and '304 Patent Applications from the moment those claims were first amended to overlap in scope with the pending claims of the '873 Patent Applications because Mr. McNamara himself made the amendments to the clams of the '477, '498, '003 and '304 Applications.

RESPONSE:  Denied.

120. On information and belief, Mr. McNamara also knew of the Withheld Office Actions from prosecution of the '394 Patent as soon as those office actions were filed because Mr. McNamara was the named recipient of each of the Withheld Office Actions.

RESPONSE:  Denied.

121.    Mr. McNamara's intent to deceive is evident from his conduct in prosecuting the '873 and '394 Patents. The '477 Application, as originally filed on December 3, 1992, did not claim the use of mailbox memories to facilitate inter-processor communications. The claims were amended in June 1994 to specifically capture this allegedly inventive aspect. From that date forward, the claims in both applications were amended so that they became increasingly similar.

36

On information and belief, Mr. McNamara understood that he was writing claims in two distinct applications that covered the same subject matter.

RESPONSE:  Denied.

122.    In the prosecution of the applications that matured into the '873 Patent, the '165 Patent, the '393 Patent and '394 Patent, Mr. McNamara repeatedly emphasized the claimed ability of a processor to write to its mailbox memory "at any time" as an "important feature" absent from the prior art. Thus, at the same time Mr. McNamara was repeatedly arguing to the '394 Patent examiner that this "write accessible at any time" feature was unique to the claims in the '394 Patent application, Mr. McNamara was also arguing that this same feature distinguished the claims in the '873 Patent Applications. Mr. McNamara thus clearly understood that this pivotal claim limitation was the linchpin to his efforts to establish the novelty of the purported mailbox memory invention in the applications that matured into the '873, '165, and '394 Patents.

RESPONSE:   Admitted that the paragraph purports to reproduce a quote from the referenced document.  As to the last sentence of this paragraph, denied.  Regarding the remainder of this paragraph, Plaintiff lacks knowledge or information sufficient to form a belief about the truth of the allegations herein, therefore, denied.

123.    On information and belief, while Mr. McNamara withheld information relating to the co-pending '477, '498, '003, and '304 Applications to avoid fatal claim rejections during prosecution of the '873 Patent, he also affirmatively used information gained during prosecution of the '394 Patent to benefit the prosecution of the '873 Patent. Mr. McNamara's conduct allowed AMD to proceed with separate prosecutions that ultimately allowed them to obtain multiple patents on the same alleged invention.

RESPONSE:  Denied.

124.    As a result of Norman's allegations, an actual case or controversy exists between FUJIFILM and Norman as to the enforceability of the '873 Patent. Absent a declaration of unenforceability, Norman will continue to assert the '873 Patent against FUJIFILM and others, including its customers, in violation of the laws and contrary to the public policy of the United States, and will thereby continue to cause FUJIFILM irreparable injury and damage.

RESPONSE:    Regarding the first sentence of this paragraph, admitted.    As to the remainder of this paragraph, denied.

125.    FUJIFILM therefore seeks a judicial declaration that the '873 Patent is unenforceable.

RESPONSE:  Admitted that FUJIFILM seeks a declaration; denied that it is meritorious.

## COUNT TEN
## DECLARATORY JUDGMENT OF NON-INFRINGEMENT OF THE '555 PATENT

126.    FUJIFILM restates and incorporates herein by reference the responses and allegations contained in the foregoing paragraphs, as if fully set forth herein.

RESPONSE:  No new factual allegations are set forth in this paragraph.

127.    Norman contends that FUJIFILM has infringed and is infringing the '555 Patent. FUJIFILM has not infringed and does not infringe any valid and enforceable claim of the '555 Patent, has not induced or contributed to infringement of any such claims, is not inducing or contributing to infringement of any such claims, and has not and does not jointly infringe any such claims, either literally or under the doctrine of equivalents.

RESPONSE:    Regarding the first sentence of this paragraph, admitted.    As to the remainder of this paragraph, denied.

128.    As a result of Norman's infringement allegations, an actual case or controversy exists between FUJIFILM and Norman with regard to the purported infringement of the '555 Patent by

38

FUJIFILM. Absent a declaration of non-infringement, Norman will continue to wrongfully assert the '555 Patent against FUJIFILM and others, including its customers, in violation of the laws and contrary to the public policy of the United States, and will thereby continue to cause FUJIFILM irreparable injury and damage.

RESPONSE:   Regarding  the  first  sentence  of  this  paragraph,  admitted.   As  to  the remainder of this paragraph, denied.

129.    FUJIFILM therefore seeks a judicial declaration that it has not infringed and does not infringe the '555 Patent.

RESPONSE:  Admitted that FUJIFILM seeks a declaration; denied that it is meritorious.

## COUNT ELEVEN
## DECLARATORY JUDGMENT OF INVALIDITY OF THE '555 PATENT

130.    FUJIFILM restates and incorporates herein by reference the responses and allegations contained in the foregoing paragraphs, as if fully set forth herein.

RESPONSE:  No new factual allegations are set forth in this paragraph.

131.    Norman has asserted the '555 Patent against FUJIFILM. On information and belief, one or more claims of the '555 Patent are invalid for failure to meet the conditions of patentability and/or otherwise comply with one or more of the provisions of Title 35 of the United States Code, including but not limited to one or more of 35 U.S.C. §§ 101, 102, 103, and 112.

RESPONSE:   Regarding  the  first  sentence  of  this  paragraph,  admitted.   As  to  the remainder of this paragraph, denied.

132.    As a result of Norman's allegations, an actual case or controversy exists between FUJIFILM and Norman as to the validity of the '555 Patent.  Absent a declaration of invalidity, Norman will continue to assert the '555 Patent against FUJIFILM and others, including its customers, in violation of the laws and contrary to the public policy of the United States, and will thereby continue to cause FUJIFILM irreparable injury and damage.

RESPONSE:   Regarding the first sentence of this paragraph, admitted.   As to the remainder of this paragraph, denied.

133. FUJIFILM therefore seeks a judicial declaration that the '555 Patent is invalid.

RESPONSE:  Admitted that FUJIFILM seeks a declaration; denied that it is meritorious.

## COUNT TWELVE
## DECLARATORY JUDGMENT OF UNENFORCEABILITY OF THE '555 PATENT

130.    FUJIFILM restates and incorporates herein by reference the responses and allegations contained in the foregoing paragraphs, as if fully set forth herein.

RESPONSE:  No new factual allegations are set forth in this paragraph.

135. Norman has asserted the '555 Patent against FUJIFILM. On information and belief, the '555 Patent is unenforceable under the doctrines of equitable estoppel, laches, waiver, and express or implied license.

RESPONSE:   Regarding the first sentence of this paragraph, admitted.   As to the remainder of this paragraph, denied.

136. As a result of Norman's allegations, an actual case or controversy exists between FUJIFILM and Norman as to the enforceability of the '555 Patent. Absent a declaration of unenforceability, Norman will continue to assert the '555 Patent against FUJIFILM and others, including its customers, in violation of the laws and contrary to the public policy of the United States, and will thereby continue to cause FUJIFILM irreparable injury and damage.

RESPONSE:   Regarding the first sentence of this paragraph, admitted.   As to the remainder of this paragraph, denied.

137. FUJIFILM therefore seeks a judicial declaration that the '555 Patent is unenforceable.

RESPONSE:  Admitted that FUJIFILM seeks a declaration; denied that it is meritorious.

## ANSWER TO FUJIFILM'S PRAYER FOR RELIEF

Norman denies that FUJIFILM is entitled to any of the relief requested in its Counterclaims.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff and Counter Defendant, Norman, requests that Defendants and Counter Claimants, FUJIFILM, take nothing against Plaintiff by reason of its counterclaims against Plaintiff, that Plaintiff be awarded the relief sought in its Complaint, that the Court dismiss Defendants' Counterclaims against Plaintiff in their entirety with prejudice, that Plaintiff be awarded its costs of suit, including attorneys' fees, and that the Court grant such other and further relief as it deems just and proper.

Respectfully submitted,

Dated:  September12, 2011

By: /s/ Andrew G. DiNovo
Andrew G.  DiNovo
Texas State Bar No. 00790594
Adam G. Price
Texas State Bar No. 24027750
Chester J. Shiu
Texas State Bar No. 24071126
**DiNovo Price Ellwanger & Hardy LLP**
7000 N.  MoPac Expressway, Suite 350
Austin, Texas  78731
Telephone:  (512) 539-2626
Telecopier:  (512) 539-2627

ATTORNEYS FOR PLAINTIFF
NORMAN IP HOLDINGS, LLC'S

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was filed electronically in compliance with Local Rule CV-5(a).  As such, this document was served on all counsel who are deemed to have consented to electronic service.  Local Rule CV-5(a)(3)(A).  Pursuant to FED. R. CIV. P. 5(d) and Local Rule CV-5(d) and (e), all other counsel of record not deemed to have consented to electronic service were served with a true and correct copy of the foregoing by email, on this the 12th of September, 2011.

/s/ Andrew G. DiNovo
Andrew G. DiNovo